## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICKIE DEARMORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-803-F |
| | ) |
| THE COMMISSIONER OF THE | ) |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **REVERSED** and **REMANDED** for further administrative findings.

### I.     PROCEDURAL BACKGROUND

Plaintiff's application for disability insurance benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-18). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

In evaluating Plaintiff's disability claim, the ALJ followed the five-step sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2007, the alleged onset date, through her date last insured of March 31, 2012 (TR. 12). At step two, the ALJ determined that Ms. Dearmore had the following severe impairments: lupus, status post bilateral carpal tunnel release surgeries, diabetes mellitus, hypertension, osteoarthritis bilaterally in the knees, and chronic low back pain. (TR. 12). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 13).

At step four, the ALJ found that Plaintiff the residual functional capacity (RFC) to:

> [p]erform the full range of light work as defined in 20 CFR 404.1567(b) except she can stand and/or walk up to thirty minutes at a time; sit up to sixty minutes at a time; and is limited to no more than frequent gripping, handling, fingering, and feeling bilaterally.

(TR. 14).

With this RFC, a vocational expert (VE) consulted the Dictionary of Occupational Titles (DOT) and testified that Ms. Dearmore was capable of performing her past relevant work of Insurance Customer Representative (DOT #205.567-010); Trust Operations Assistant (DOT #219.362-074); and Dispatcher (DOT #913.367-010). (TR. 42-44). The

ALJ adopted the VE's testimony and concluded that Ms. Dearmore was not disabled based on her ability to perform her past relevant work. (TR. 17).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ improperly considered Plaintiff's vision and hand impairments.[1]

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

---

[1] In a single sentence, Ms. Dearmore also states: "[The ALJ] also improperly denied [Plaintiff's] credibility with boilerplate reasoning instead of pointing to evidence that she was malingering or lying about her symptoms." (ECF No. 1:8). But the Court need not consider this as a separate challenge because Ms. Dearmore does not point to specific portions of her testimony which the ALJ had allegedly "improperly denied" nor does she otherwise further develop the argument. *See Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Murphy v. Astrue*, 2011 WL 2144610, at * 6 (W.D. Okla. May 14, 2011) (rejecting allegation of error for "failure to develop the factual—and legal—bases for [the] argument.").

## V. ERROR IN THE CONSIDERATION OF PLAINTIFF'S VISION IMPAIRMENT

Ms. Dearmore alleges that the ALJ erred in failing to deem her vision impairment severe at step two and include limitations related to the impairment in the RFC. As a result, Plaintiff contends a lack of substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work because the hypothetical to the VE failed to incorporate visual limitations. The Court should conclude that any error at step two was harmless, but that the ALJ did commit reversible error in failing to consider Plaintiff's visual limitations in formulating the RFC.

### A. Evidence Relating to Plaintiff's Vision Impairment

Ms. Dearmore has a long history of right-eye visual impairment. In December 2006, Dr. Ronald M. Kingsley with the Dean McGee Eye Institute reported that Plaintiff had 20/60 vision in her right eye, along with a superior macular branch vein occlusion with hemorrhages. (TR. 271). The physician reported "too much hemorrhage to consider focal laser" and reported her visual prognosis for her right eye as "guarded." (TR. 271). In January 2007,[2] another physician at Dean McGee reported that he believed Plaintiff was a glaucoma suspect and possibly suffered from ocular hypertension. (TR. 266). In February 2007, Dr. Kingsley reported that Plaintiff's right eye vision had decreased and her right macula showed "considerable hemorrhage and edema." (TR. 264). In April 2007, Plaintiff received a Kenalog injection in her right eye. (TR. 262). In November 2007,

---

[2] The physician's letter is actually dated January 4, 2006, but it was attached to handwritten office notes dated January 4, 2007. (TR. 266-270). Accordingly, and because Ms. Dearmore did not report vision problems until October 2006, the Court presumes the 2006 date is typographical error.

Plaintiff had decreased visual acuity in her right eye following a laser treatment. (TR. 293-294). In January 2008, Plaintiff reported "burning" and "floaters" in her right eye and in February 2008, Plaintiff received another Kenalog injection in her right eye. (TR. 292). In June 2008, Plaintiff's vision was 20/40 in her right eye. (TR. 285). In July 2008, Plaintiff reported blurry vision and her right eye vision had decreased to 20/50. (TR. 284). In February 2009, Plaintiff's right-eye vision significantly worsened to 20/100 and Dr. Kingsley noted that Ms. Dearmore's right-eye blot clot had grown. (TR. 283). Two weeks later, Plaintiff's right-eye vision was 20/125 and in April of 2009, Dr. Kingsley performed a laser treatment to treat the vein occlusion macular edema. (TR. 280, 282). One month later, Plaintiff's right-eye vision was still 20/100. (TR. 279).

In October 2010, Ms. Dearmore's right-eye vision worsened to 20/200 and in November of 2010, Plaintiff reported right-eye "floaters" and her vision in that eye was reported to be 20/250. (TR. 277-278). In October 2011, a treatment record from the OKC Clinic noted that Plaintiff was supposed to have surgery on her right eye but was denied due to finances. (TR. 379). At that time, Plaintiff was diagnosed with a right-eye cataract, her right-eye vision was 20/200, and she reported an inability to drive at night due to being scared. (TR. 379-380). In October 2013, Plaintiff was noted as having "vascular occlusion" in her right eye and in February 2014, Dr. Kingsley noted branch retinal vein occlusion in Plaintiff's right eye and vitreous floaters in both eyes. (TR. 518-519, 523).

### B. Error in the Consideration of Plaintiff's Visual Impairment

Plaintiff alleges errors at steps two and four regarding the ALJ's treatment of her vision impairment. First, Ms. Dearmore alleges that the ALJ erred in failing to consider

the impairment as "severe" at step two. (ECF No. 12:2-4). Second, Plaintiff argues error in the failure to include limitations related to the impairment in the RFC at step four. (ECF No. 12:5-7). As a result of the step four error, Plaintiff contends that substantial evidence fails to support the ALJ's finding that Plaintiff could perform her past relevant work because the hypothetical to the VE failed to incorporate visual limitations. The Court should conclude: (1) any error at step two was harmless and (2) the ALJ did err at step four.

### C. Step Two

At step two, the ALJ found that Plaintiff's right eye vision loss was "considered a nonsevere impairment," stating:

> The claimant has also been assessed with right eye vision loss. However, there is nothing in the record that indicates this impairment rises to the level of having an effect on the claimant's ability to do basic physical or mental work activities.

(TR. 12). Ms. Dearmore challenges the ALJ's findings, stating: "The ALJ should have remembered that an impairment is severe if it has more than a minimal impact on the ability to work." (ECF No. 12:3). However, Plaintiff admits that any error at step two is harmless, so long as the ALJ found the existence of at least one other severe impairment, and proceeded to the remaining steps of the evaluation process. (ECF No. 12:4). Plaintiff is correct, and any error at step two in failing to consider the vision impairment as severe, was harmless. *See Oldham v. Astrue,* 509 F.3d 1254, 1256–1257 (10th Cir. 2007) (rejecting a similar step two challenge, noting that finding a single severe impairment "was all the ALJ was required to do in that regard"); *see also Brescia v. Astrue,* 287 F.

App'x 626, 629 (10th Cir. 2008) ("Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as 'severe' at step two does not constitute reversible error . . . .").

### D. Step Four

Even though any error at step two would be harmless, the ALJ was still required to discuss the combined effect of all the claimant's medically determinable impairments, including the vision impairment, when formulating the RFC. *See Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013). At one point during the disability period, Ms. Dearmore's right eye vision was found to be 20/250. (TR. 277). "Common sense dictates that having extremely low vision in one eye would necessarily impose some limitations . . . in the RFC." *James v. Colvin*, No. CIV-12-851-W, 2013 WL 4077865, at *3 (W.D. Okla. Aug. 12, 2013). But at step four, the ALJ did not include any limitations related to Plaintiff's right eye vision loss, nor did he discuss any potential impact of the impairment. (TR. 14-17). At the hearing, Plaintiff testified that her right-eye blood clot "obstructs her view," and that she has "black floaters" which cause her to lose sight for "a couple of minutes" while she blinks to regain focus. (TR. 33). But in the decision, the ALJ omitted this portion of Plaintiff's testimony and did not otherwise comment whether he believed it. (TR. 16-17).

"Visual impairments are nonexertional impairments [that] must be considered in determining a claimant's RFC." *Mose v. Apfel*, 1999 WL 1063829, at *3) (10th Cir. 1999). The ALJ's failure to discuss the impact of Plaintiff's vision impairment was critical because the ALJ ultimately found that Plaintiff could return to her past relevant work involving jobs which required "frequent" or "constant" near visual acuity. *See* TR. 17; DOT

#205.567-010 (Insurance Customer Representative); DOT #219.362-074 (Trust Operations Assistant); and DOT #913.367-010 (Dispatcher).[3] When completing the first part of the step four analysis—assessing Plaintiff's RFC—the ALJ completely failed to consider or include any limitations relating to Plaintiff's vision loss, nor did he explain why. The Tenth Circuit Court of Appeals has held that "the ALJ['s] fail[ure] to consider plaintiff's vision loss in conducting the step four inquiry about the ability to perform past relevant work. . . . alone, would be grounds for reversal." *Washington v. Shalala*, 37 F.3d 1440 (10th Cir. 1994). As a result, the ALJ's hypothetical to the VE failed to include any vision-loss related restrictions and the VE testimony gave no consideration to Plaintiff's vision impairment. (TR. 42-43). Because the jobs relied on required "frequent" and "constant" near vision acuity, the error cannot be considered harmless. *See Burger v. Colvin*, No. CIV-13-0062-F, 2014 WL 494568, at *4 (W.D. Okla. Feb. 6, 2014) (ALJ's failure to include right-eye vision loss limitations was not harmless when jobs relied on by ALJ required "frequent" near visual acuity).

VI. **NO ERROR IN THE CONSIDERATION OF PLAINTIFF'S HAND IMPAIRMENT**

Ms. Dearmore alleges that the ALJ erred in determining that Plaintiff could "frequently" grip, handle, finger, and feel with both hands. (ECF No. 12:7-8). According to Plaintiff: (1) "there is no medical evidence" to support the ALJ's finding and (2)

---

[3] The *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* states that "frequently" involves an activity existing from 1/3 to 2/3 of the time and "constantly" involves an activity or condition that exists 2/3 or more of the time. (U.S. Dept. of Labor 1993) at C–3.

Plaintiff's testimony, which is supported by the medical evidence, supports a contrary finding. (ECF No. 12:7-8). The Court should reject both arguments.

First, Ms. Dearmore apparently believes that the ALJ was required to base his finding on a specific medical opinion regarding Plaintiff's ability to "frequently" use her hands. But a written opinion outlining specific functional limitations is not necessary for an ALJ to make an RFC determination. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (noting that the ALJ "is charged with determining a claimant's RFC from the medical record" and rejecting an argument "that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category").

Second, Plaintiff contends that medical findings regarding pain in her hands and an inability to make a fist support her testimony that her right middle finger "locks up," she cannot make a fist, and she has difficulty holding on to things. (ECF No. 12:7-8). As a result, Ms. Dearmore argues that the ALJ made an improper finding regarding her ability to "frequently" use her hands. But the ALJ considered Plaintiff's testimony and reviewed various medical records related to Plaintiff's hand impairment in formulating the RFC. (TR. 16). Plaintiff is not charged with the task of weighing the evidence and deciding whether it supports a finding of disability. That task is left to the ALJ in the first instance and this Court will not reweigh the evidence to reach a contrary conclusion. *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015). Accordingly, the Court should reject Plaintiff's argument regarding the ALJ's consideration of her hand impairment.

## VII. RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED** and **REMANDED** for further administrative findings.

## VIII. NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **March 14, 2017.** The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

### STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on February 28, 2017.

*[signature: Shon T. Erwin]*

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE